No. 12613

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

CHARLES SPURGEON,

                Plaintiff and Respondent,

-vs-

JAMIESON MOTORS, a corporation,

                Defendant and Appellant.

---

Appeal from: District Court of the Twelfth Judicial District,
Honorable Thomas Dignan, Judge presiding.

Counsel of Record:

    For Appellant:

        Burns, Solem and MacKenzie, Chinook, Montana
        William M. Solem argued, Chinook, Montana

    For Respondent:

        Sias and Hendrickson, Chinook, Montana
        Oscar Hendrickson argued, Chinook, Montana

---

Submitted: March 19, 1974

Decided: APR 2 5 1974

Filed: APR 2 5 1974

_Thomas J. Kearney_
                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of Blaine County, sitting without a jury, in favor of the plaintiff in an action to rescind a purchase contract for breach of warranties.

Defendant, Jamieson Motors, is a corporation engaged in the business of selling machinery. Plaintiff, Charles Spurgeon, is engaged in farming and ranching operations. In January 1970, plaintiff entered into a contract to purchase from defendant a used 16' Case Combine approximately ten years old for the sum of $1,700. Prior to entering into the contract, plaintiff examined the combine and it was agreed that certain work would be performed on the combine and that it would be made "field ready". The agreed-upon work was performed and the combine was "field ready" when plaintiff took delivery.

Plaintiff took delivery of the combine in July of 1970 at defendant's lot and drove it some 62 miles over gravel roads to his farm. Early in August, 1970, plaintiff began to use the combine to harvest grain; after harvesting approximately five acres, the variable drive on the combine broke. After 5 or 6 repair attempts by plaintiff and defendant approximately 15 more acres were harvested. The combine then broke down again and was not repaired until mid-November 1970. In 1971 plaintiff used the combine to harvest approximately 5 acres and again the combine broke down. After repairs, 3 more acres were harvested and then the straw walker broke. Plaintiff phoned defendant and defendant offered the use of another combine. Plaintiff refused this offer and hired combines to finish the harvest of his 1971 crop. In September, 1971, plaintiff returned the combine to defendant's lot. Subsequently, defendant offered to repair and attempt to sell the combine on plaintiff's behalf but no agreement was reached.

The only representations made as to the condition of the combine were that it would be "field ready" when delivered. The district court found that the combine was in fact "field ready" when plaintiff took possession. The purchase contract was for a "used combine" and provided in pertinent part:

> " * * * This warranty is in lieu of all other warranties, expressed, implied, or statutory, and all other obligations or liabilities on the part of the Dealer and Company. No representative of the Company has authority to change the terms of this warranty in any manner whatsoever and no assistance to Purchaser by the Dealer or Company in the repair or operation of the Case product shall constitute a waiver of the conditions of this warranty, nor shall such assistance extend or revive it. <u>This warranty does not apply to used or second-hand machines.</u>" (Emphasis added.)

Undisputed testimony in the record indicates that the custom and usage in the area was that used machinery was not warranted. The only exception to this practice was the so called 50-50 warranty given on late model equipment under which the dealer pays one-half the cost of repairs and the purchaser pays the other half. During 1970 and 1971 defendant paid one-half the cost of repairs to the combine. In 1970 plaintiff paid the other half. Plaintiff refused the cost of one-half of the repairs in 1971 thus giving rise to defendant's counterclaim for $139.90, which represents one-half of the cost of repairs performed during 1971 at plaintiff's request.

The district court based its judgment for plaintiff on conclusions of law that the implied warranties as to merchantability and fitness for purpose of use were not met, and that plaintiff returned the combine within a reasonable time after discovery of the breach of these warranties.

Plaintiff raises two issues on this appeal. First, that the district court erred in finding implied warranties of merchantability and fitness for purpose applicable. Second, that even

- 3 -

if the warranties of merchantability and fitness for purpose were applicable it was error to find that plaintiff rescinded within a reasonable time.

Defendant raises three separate arguments in support of the contention that the district court erred in finding implied warranties of merchantability and fitness for purpose applicable. First, defendant asserts that the warranties did not apply to used goods. Second, defendant claims that the implied warranties were excluded under the terms of the contract. Finally, he asserts that the warranties were excluded by usage of trade. If any one of these claims are valid, then it will be unnecessary to consider any of the other issues raised.

The implied warranties on which plaintiff relies are created by 87A-2-314, R.C.M. 1947, which provides:

"Implied warranty--merchantability--usage of trade. (1) Unless excluded or modified (section 87A-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as

"(a) pass without objection in the trade under the contract description; and

"(b) in the case of fungible goods, are of fair average quality within the description; and

"(c) are fit for the ordinary purposes for which such goods are used; and

"(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) are adequately contained, packaged, and labeled as the agreement may require; and

"(f) conform to the promises or affirmations of fact made on the container or label if any.

"(3) Unless excluded or modified (section 87A-2-316) other implied warranties may arise from course of dealing or usage of trade."

Section 87A-2-315, R.C.M. 1947, provides:

"Implied warranty--fitness for particular purpose.
Where the seller at the time of contracting has
reason to know any particular purpose for which
the goods are required and that the buyer is rely-
ing on the seller's skill or judgment to select
or furnish suitable goods, there is unless excluded
or modified under the next section an implied warranty
that the goods shall be fit for such purpose."

The warranties created by these two sections are limited by

section 87A-2-316, R.C.M. 1947, which provides:

"Exclusion or modification of warranties. (1) Words
or conduct relevant to the creation of an express
warranty and words or conduct tending to negate
or limit warranty shall be construed wherever reason-
able as consistent with each other; but subject to
the provisions of this chapter on parol or extrinsic
evidence (section 87A-2-202) negation or limitation
is inoperative to the extent that such construction
is unreasonable.

"(2) Subject to subsection (3), to exclude or
modify the implied warranty of merchantability or
any part of it the language must mention merchant-
ability and in case of a writing must be conspicuous,
and to exclude or modify any implied warranty of
fitness the exclusion must be by/writing and con-
spicuous. Language to exclude all implied warranties
of fitness is sufficient if it states, for example,
that 'There are no warranties which extend beyond
the description on the face hereof.'

"(3) Notwithstanding subsection (2)

"(a) unless the circumstances indicate otherwise,
all implied warranties are excluded by expressions
like 'as is,' 'with all faults' or other language
which in common understanding calls the buyer's
attention to the exclusion of warranties and makes
plain that there is no implied warranty; and

"(b) when the buyer before entering into the con-
tract has examined the goods or the sample or model
as fully as he desired or has refused to examine
the goods there is no implied warranty with regard
to defects which an examination ought in the cir-
cumstances to have revealed to him; and

"(c) an implied warranty can also be excluded or
modified by course of dealing or course of per-
formance or usage of trade.

"(4) Remedies for breach of warranty can be limited
in accordance with the provisions of this chapter
on liquidation or limitation of damages and on con-
tractual modification of remedy (sections 87A-2-718
and 87A-2-719)."

- 5 -

Applied to the facts of this case provisions of 87A-2-316(3)(c), R.C.M. 1947, which provide for the limitation of warranties by usage of trade are particularly relevant. Section 87A-1-205(2), R.C.M. 1947, defines the term usage of trade saying:

> "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. * * *"

Undisputed testimony in the record indicates that used farm machinery, particularly used combines, was not warranted with the exception of the 50-50 warranty under which each party to the transaction paid for one-half of the cost of repairs. If the plaintiff-purchaser was or should have been aware of this trade usage it will effectively exclude the warranties on which he relies.

Preliminary to a discussion of plaintiff's knowledge, it should be noted that he owned a large farm-ranch operation and had been in the farming business for a substantial length of time. While there is no direct evidence by the plaintiff in the record which shows that he was aware of the trade usage with regard to used equipment, it is not disputed that he paid for one-half of the repairs during the first year he had the combine. This willingness to pay in part for repairs is inconsistent with the existence of the warranties plaintiff now claims existed. Plaintiff bargained for a combine warranted to be "field ready" when he took delivery and this he received. He knew or should have known that used machinery was customarily not warranted beyond a sharing of the cost of repairs, and he acquiesed for more than a year in this arrangement with regard to the used combine. From this it appears plaintiff was aware of the usage of trade limiting warranties on used machinery and that accordingly the implied warranties

of merchantability and fitness for purpose are excluded.

Since we have held the warranties relied on by plaintiff to be inapplicable, it is not necessary to determine whether or not return of the combine occurred within a reasonable time.

The judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with the foregoing.

_____
                    Justice

We concur:

_____
Chief Justice

_____

_____
Justices